**UNITED STATES of America ex rel. James T. STEVENS, Petitioner,**

**v.**

**John J. McCLOSKEY, for a writ of habeas corpus to inquire into his detention by the Sheriff of New York City.**

United States District Court
S. D. New York.

March 17, 1965.

**420**

Molony & Schofield, New City, N. Y., for petitioner; Gerard E. Molony, John P. Schofield, New City, N. Y., of counsel.

Frank S. Hogan, Dist. Atty., New York County, New York City, for respondent; Michael R. Stack, Asst. Dist. Atty., of counsel.

WEINFELD, District Judge.

The petitioner, until recently a lieutenant with the New York City Police Department, is in custody upon a third state court judgment of conviction for contempt,[1] arising out of his refusal to answer a question put to him by a grand jury investigating alleged police corruption. He seeks his release by Federal writ of habeas corpus on the ground that his rights under the Fifth and Sixth Amendments were violated when, given the choice under New York law either of executing a limited waiver of immunity or losing his job,[2] he signed the waiver.

---

1. To prevent expiration of petitioner's sentence pending decision, this Court issued a writ pursuant to which he was brought into Federal custody and, in the absence of opposition from respondent, released on his own recognizance. See Johnston v. Marsh, 227 F.2d 528, 530 n. 4 (3d Cir. 1955).

2. N.Y.Const. art. 1, § 6 provides, in part: "No person * * * shall be compelled in any criminal case to be a witness against himself, providing, that any public officer who, upon being called before a grand jury to testify concerning the conduct of his office or the performance of his official duties, refuses to sign a waiver of immunity against subsequent criminal prosecution, or to answer any relevant question concerning such matters before such grand jury, shall by virtue of such refusal, be disqualified from holding any other public office or public employment for a period of five years, and shall be removed from office * * *." A similar provision is contained in N.Y.C. Charter § 1123.

He did not then have the benefit of counsel. Having previously been twice convicted for failing to answer the same question, he also advances a further contention that his present imprisonment constitutes double jeopardy.

On June 25, 1964, petitioner was served with a subpoena commanding his appearance before a June grand jury of the Supreme Court, New York County. Before entering the jury room, he was advised by an assistant district attorney that, pursuant to state law, unless he signed a waiver of immunity he would forfeit his job. He signed the waiver, whereupon he was brought before the grand jury, informed that he was a potential defendant and advised of his right against self incrimination and of state constitutional and city charter provisions requiring public employees to execute limited waivers of immunity. He then acknowledged he had executed the waiver and understood its effect. Petitioner was sworn, asked his name and similar preliminary questions, and then given a financial questionnaire to complete and return. His next appearance was before a July grand jury, when, represented by counsel, he declined to sign another waiver and asked to withdraw the earlier waiver on the ground that he had not had time to confer with counsel prior to its execution. The following day he was discharged from the Police Department because of his refusal to sign a new waiver before the July grand jury. He was then summoned to reappear before the June grand jury (the one before which he had signed a waiver) and refused to answer any questions, including one with respect to alleged payments from bookmakers and policy operators. Upon reiteration of his refusal to answer before a Justice of the State Supreme Court, he was ad-

judged in contempt, sentenced to serve thirty days, and fined $250. Pending an appeal to the Appellate Division, he sought a stay of the sentence, which was denied.[3] When the Appellate Division affirmed his conviction[4] and leave to appeal to the Court of Appeals had been denied, he had already served his sentence and paid the fine.

Upon expiration of his first contempt conviction, on September 28, 1964 he was again called before the June grand jury and again refused to answer the question asked of him in July, whereupon he was held in contempt and sentenced to another term of thirty days and fined $250.[5] His third refusal to answer the question before the June grand jury resulted, on January 15, 1965, in his third summary conviction and imposition of a similar sentence.

■■ It is the State's contention that section 2254 of Title 28, United States Code, requires dismissal of this application on the ground that petitioner has failed, with respect to this third conviction, to exhaust presently available state remedies by an Article 78 proceeding, although it recognizes that his unsuccessful state court test of the first conviction raised the same self-incrimination and right to counsel questions here pressed. This Court is of the view that the exhaustion doctrine does not require petitioner to go through the formality of a futile, time-consuming appeal each time he is adjudged in contempt for failure to answer the same question. Indeed, section 2254 expressly excuses resort to the state courts where, as here, there exist "circumstances rendering such process ineffective to protect the rights of the prisoner." To require repeated and fruitless applications for state court relief would not only confine him to a revolving door

3. Following this denial he applied for a writ of habeas corpus in this Court, which Judge Herlands denied for failure to exhaust available state remedies, which disposition was affirmed by our Court of Appeals.

4. Stevens v. Marks, 22 App.Div.2d 683, 253 N.Y.S.2d 401 (1st Dep't 1964).

5. Prior to surrender on this second conviction, petitioner sought to remove the proceeding to the Federal court for this district, pursuant to 28 U.S.C. § 1443. Judge MacMahon dismissed the petition on October 20, 1964.

process leading nowhere, but "invite the reproach that it is the prisoner rather than the state remedy that is being exhausted." [6]

The State, however, is on firmer ground in advancing the exhaustion doctrine with respect to the petitioner's claim of double jeopardy. It was never presented to the state courts for consideration, presumably in light of a just decided New York Court of Appeals decision rejecting a similar argument.[7] It was first raised in the petition for the instant writ, but was neither briefed nor argued. In view of the Court's basis for its disposition of this proceeding, it is unnecessary to consider whether the recent state rulings, which seemingly are dispositive of petitioner's double jeopardy plea, relieve him of applying first to the state court before applying to this Court for relief on that ground.

A more basic question is presented, although the State does not raise it, by the circumstance that the petitioner still has ample time within which to challenge his first conviction in the United States Supreme Court. The New York Court of Appeals denied leave to appeal on February 4, 1965; thus petitioner has through May 5 to move for direct review,[8] but he has taken no such step.

Fay v. Noia [9] overruled Darr v. Burford [10] to the extent that it conditioned Federal habeas corpus relief upon a prior certiorari application to the Supreme Court. But whether a prisoner may now proceed directly in a Federal district court to collaterally attack his state court conviction when a remedy is still available in the Supreme Court, and further, whether in an appropriate case the district courts have discretion to require pursuit of such available Supreme Court review,[11] is less clear.[12] Consistent with the Supreme Court's view that the "needs of comity" are adequately served by the exhaustion of state remedies and by the availability to the states of eventual review in the Supreme Court of Federal habeas corpus decisions,[13] and that review by certiorari is more meaningful following compilation of a full and complete record by the lower Federal court, this Court concludes that a state prisoner may, in an appropriate case, seek relief in the district court by way of habeas corpus, notwithstanding that direct review in the Supreme Court is still open to him. However, the prisoner does not have an absolute right to bypass the Supreme Court. The district court, just as it has discretion to deny habeas corpus to a prisoner who has bypassed or-

6. United States ex rel. Kling v. LaVallee, 306 F.2d 199, 203 (2d Cir. 1962) (concurring opinion).

7. Matter of Ushkowitz v. Helfand, 15 N.Y. 2d 713, 256 N.Y.S.2d 339, 204 N.E.2d 498 (1965), relying on Second Add. Grand Jury v. Cirillo, 12 N.Y.2d 206, 237 N.Y.S. 2d 709, 188 N.E.2d 138, 94 A.L.R.2d 1241 (1963). Compare Yates v. United States, 355 U.S. 66, 78 S.Ct. 128, 2 L.Ed.2d 95 (1957); People v. Riela, 7 N.Y.S.2d 571, 200 N.Y.S.2d 43, 166 N.E.2d 840, appeal dismissed and cert. denied, 364 U.S. 474, 915, 81 S.Ct. 242, 5 L.Ed.2d 221 (1960).

8. U.S.Sup.Ct.R. 11(1); 28 U.S.C.A. § 2101(c).

9. 372 U.S. 391, 435, 83 S.Ct. 822, 9 L.Ed. 2d 837 (1963).

10. 339 U.S. 200, 70 S.Ct. 587, 94 L.Ed. 761 (1950).

11. See Wade v. Mayo, 334 U.S. 672, 680–681, 68 S.Ct. 1270, 92 L.Ed. 1647 (1948), overruled in Darr v. Burford, 339 U.S. at 208–210, 70 S.Ct. 587, but arguably resurrected in Fay v. Noia, 372 U.S. at 435, 83 S.Ct. 822.

12. The question is sometimes avoided by the petitioner's waiting ninety days before seeking Federal district court relief. See Appendix, p. 19a, United States ex rel. Carthan v. Sheriff, City of New York, 330 F.2d 100 (2d Cir. 1964). Imposition of such a ninety-day waiting period, however, seems contrary to Fay v. Noia's advocacy of "swift and imperative justice on habeas corpus." 372 U.S. at 435, 83 S.Ct. at 847.

13. Fay v. Noia, 372 U.S. at 437–438, 83 S. Ct. 822.

derly state procedures,[14] also has discretion to require him to exhaust currently available Supreme Court remedies. And the circumstances of this case justify requiring the petitioner here to seek such review.

First, an appropriate amendment by the New York Court of Appeals of its remittitur would enable petitioner to appeal from the contempt conviction as of right on the ground that a state statute was "drawn in question" and upheld over his Federal constitutional objections.[15] Secondly, failing to secure an adequate amendment to the remittitur to permit such an appeal as of right, petitioner would still be in a position to apply for certiorari; and in either event, bail could be granted.[16] Thirdly, unlike most such applications,[17] the petitioner's was prepared by counsel and presents an adequate basis for decision. Finally, petitioner's success depends upon reconsideration of a Supreme Court decision which, so long as its validity remains unimpaired, this Court regards as dispositive of petitioner's claim.

In Regan v. People of State of New York,[18] a New York City policeman was summoned before a grand jury investigating corruption. He, too, executed a waiver of immunity, then sought to repudiate it on the ground that at the time of its execution he was under economic duress and unclear as to his rights. Regan was convicted of contempt, although by a jury, for refusing to answer questions put to him by the grand jury. The Supreme Court held that, where there was an adequate immunity statute, Regan had no constitutional right to remain silent, and that his contentions with respect to the waiver were premature. Said the Court:[19]

"The waiver of immunity, although it does affect the possibility of subsequent prosecution, does not alter petitioner's underlying obligation to testify. Much of the argument before this Court has been directed at the question of whether the waiver of immunity was valid or invalid, voluntary or coerced, effectual or ineffectual. That question is irrelevant to the disposition of this case for on either assumption the requirement to testify, imposed by the grant of immunity, remains unimpaired.

\*  \*  \*  \*  \*  \*

"The invalidity of the waiver may be made a defense to subsequent prosecution, where it would be a proper matter for disposition; it is no defense to a refusal to testify."

Petitioner's attempts to distinguish Regan are unpersuasive, the factual differences in the two cases appearing to have no relevance to the ground of decision there. Moreover, the Supreme Court last Term reaffirmed the basic premise underlying Regan: that valid state immunity legislation empowers a state to compel testimony which would otherwise be self-incriminating.[20] Unless Regan is to be overruled, resolution of petitioner's contentions concerning the validity of the waiver must await an attempt to prosecute him on the basis of compelled testi-

---

14. Id. at 438, 83 S.Ct. 822.

15. 28 U.S.C. § 1257(2). Of course, petitioner must apply for and obtain an amended remittitur indicating consideration and disposition of his Federal contentions. See Ungar v. Sarafite, 376 U.S. 575, 582–583, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964).

16. 18 U.S.C. § 3144; Hudson v. Parker, 156 U.S. 277, 284–287, 15 S.Ct. 450, 39 L.Ed. 424 (1895).

17. See Brown v. Allen, 344 U.S. 443, 492–495, 73 S.Ct. 397, 97 L.Ed. 469 (1953) (separate opinion by Frankfurter, J.).

18. 349 U.S. 58, 75 S.Ct. 585, 99 L.Ed. 883 (1955).

19. Id. at 62, 64, 75 S.Ct. at 587, 588.

20. See Murphy v. Waterfront Comm'n, 378 U.S. 52, 79, 93–100, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964). The relevance of Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964) is less clear, since the Regan court seems to have proceeded on the assumption that the self-incrimination clause did apply.

**424**

mony,[21] or an adjudication with respect to his employment rights.[22] The District Court should not be called upon to divine whether Regan remains controlling authority. So long as an avenue to the Supreme Court is open, petitioner in these circumstances ought to avail himself of it.

The writ upon which petitioner was brought into Federal custody is dismissed and petitioner, having been released on his own recognizance pending determination of this proceeding, is directed to surrender to the State within five days.

---

21. See People v. Guidarelli, 255 N.Y.S.2d 975 (3d Dep't 1965).

22. There is currently pending in the State Supreme Court petitioner's Article 78 proceeding to review his discharge. The State's answer contains an offer to restore petitioner to his position with back pay, provided he testifies pursuant to the waiver now under attack.