UNITED STATES of America ex rel.
James T. STEVENS, Petitioner-
Appellant,

v.

John J. McCLOSKEY, as Sheriff of the
City of New York, New York,
Respondent-Appellee.

No. 453, Docket 29595.

United States Court of Appeals
Second Circuit.

Argued March 29, 1965.

Decided May 11, 1965.

Gerard E. Molony, of Molony & Schofield, New City, N. Y., for petitioner-appellant.

Michael R. Stack, Asst. Dist. Atty., New York County (Frank S. Hogan, Dist. Atty., H. Richard Uviller, Asst. Dist. Atty., New York County, on the brief), for respondent-appellee.

Before LUMBARD, Chief Judge, and SWAN and KAUFMAN, Circuit Judges.

KAUFMAN, Circuit Judge:

The principal issue on this appeal is whether a municipal employee could properly refuse to testify before a state grand jury by merely asserting that he did not voluntarily waive the immunity from prosecution conferred by state law. Although the validity of the waiver executed by the petitioner, James T. Stevens, has yet to be determined, he has thrice been adjudged in criminal contempt for refusing, despite directions from two New York State Supreme Court justices, to answer questions propounded by the grand jury. Claiming that he had exhausted the state remedies available to contest his first contempt conviction, the petitioner applied for a writ of habeas corpus in the United States District Court to challenge the third conviction, which like the first two carries a sentence of thirty days' imprisonment, a $250 fine and in default of the fine an additional 30-day prison term. The District Court denied relief, alluding to a directly relevant Supreme Court holding, Regan v. People of State of New York, 349 U.S. 58, 75 S.Ct. 585, 99 L.Ed. 883 (1955), that any contentions respecting the validity of the waiver of immunity are, under such circumstances, premature and do not alter the underlying obligation to testify. We affirm.

The basic facts are undisputed, although seemingly complicated—as the following recitation will indicate—by petitioner's repeated efforts to test, in both the state and federal courts, his duty to testify. Stevens, a lieutenant in the New York City Police Department, was first served with a subpoena the morning of June 25, 1964, commanding his appearance as a witness before the First June 1964 Grand Jury, which was then investigating alleged bribes to public officials to frustrate enforcement of the state's anti-gambling laws. Outside the grand jury room, Stevens, without counsel at the time, was advised by an assistant district attorney to sign a limited waiver of immunity; otherwise, pursuant to the state constitution and city charter,[1] he would be subject to removal from office. Stevens executed the waiver and went before the grand jury. There he was informed that he was a potential defendant and advised of his privilege against self-incrimination and the state constitutional and city charter provisions requiring public employees to execute limited waivers of immunity or else suffer disqualification from office for five years. Petitioner then acknowledged that he had already executed the waiver of immunity and understood its effect. He answered a few perfunctory questions, identifying himself by name, address, rank and police

1. The New York State Constitution, art. I, sec. 6, provides in part: "No person * * * shall * * * be compelled in any criminal case to be a witness against himself, providing, that any public officer who, upon being called before a grand jury to testify concerning the conduct of his office or the performance of his official duties, refuses to sign a waiver of immunity against subsequent criminal prosecution, or to answer any relevant question concerning such matters before such grand jury, shall by virtue of such refusal, be disqualified from holding any other public office or public employment for a period of five years, and shall be removed from office * * *." A similar provision may be found in New York City Charter § 1123.

command, and was dismissed with instructions to return at a later date with a completed financial questionnaire.

On July 15, having been subpoenaed to appear before the Third July 1964 Grand Jury, Stevens—now represented and advised by counsel—declined to sign a new limited waiver of immunity prior to giving any further testimony before this grand jury. At that time he also sought to withdraw the waiver he had previously signed in connection with his appearance before the First June 1964 Grand Jury, claiming that he had been denied the right to consult with counsel when it was executed. As a consequence of these actions, Stevens received formal notice, the following day, that his employment as a police lieutenant was terminated.

One week later, on July 22, Stevens was summoned to reappear before the First June 1964 Grand Jury. He quickly informed that body of his discharge from the police department since his appearance on June 25 and his attorney's advice that, notwithstanding the waiver he had previously signed, he had a constitutional privilege not to testify unless immunity from prosecution was expressly conferred. He was then asked the following question which he refused to answer on the aforesaid ground:

Did you during the last five years receive any money from bookmakers or policy operators in order to permit these bookmakers and policy operators to conduct their gambling oper-

ations in violation of the Penal Law of the State of New York?

Petitioner thereafter was directed by a judge of the State Supreme Court to answer the question and warned of the consequences if he persisted in invoking his purported federal constitutional privilege not to testify. Stevens remained steadfast in his refusal and was adjudged in criminal contempt.

While a review of this contempt citation was pending in the state courts but after expiration of the 30-day prison sentence,[2] Stevens was again subpoenaed on September 28, 1964, to reappear for the third time before the same First June 1964 Grand Jury. Once more the question regarding receipt of payments from gamblers was posed and again petitioner persevered in his refusal to respond. This contumacious conduct led to a second judgment of criminal contempt, imposed by another judge of the State Supreme Court.[3]

During the period when petitioner was serving his second 30-day contempt sentence, the Appellate Division of the Supreme Court dismissed his petition seeking to annul the first judge's adjudication of contempt. Stevens v. Marks, 22 A.D.2d 683, 253 N.Y.S.2d 401 (1964). The Court, citing the Supreme Court's decision in Regan v. People of State of New York, supra, held that Stevens' challenge to the validity or effectiveness of the waiver of immunity, although available as a defense in any subsequent prosecution which might arise from the grand

2. While serving his 30-day sentence, Stevens applied to the United States District Court for a writ of habeas corpus, claiming that his privilege against self-incrimination and right to counsel had been abridged in the state court proceedings. Judge Herlands denied the petition, noting that an Article 78 proceeding in the nature of an appeal, New York Civil Practice Law and Rules § 7801, was then pending before the Appellate Division and, therefore, Stevens had not met the general requirement, 28 U.S.C. § 2254, that available state remedies be exhausted before invoking federal habeas corpus.

3. Instead of taking advantage of the five days afforded to apply to the Appellate Division of the State Supreme Court for a stay of execution of the second contempt conviction pending appeal, Stevens sought to remove the proceedings to the Federal District Court pursuant to 28 U.S.C. § 1443. Judge MacMahon vacated and dismissed the removal petition, indicating that Stevens could not do by indirection what he could not do directly— test the validity of his waiver of immunity in advance. He noted, moreover, that neither the provisions of the state constitution nor the city charter providing for waivers of immunity infringed any state or federal constitutional right.

jury probe, was not a sufficient justification for refusing to testify at this preliminary stage in the proceedings.

After Stevens completed serving the second sentence and while his motion for leave to appeal from the Appellate Division's adverse decision was pending before the New York Court of Appeals, he was subpoenaed, on January 15, 1965, to appear for the fourth time before the First June 1964 Grand Jury. He continued to persist in his refusal to testify, both before that body and in the face of the judge's new direction. Accordingly, Stevens was adjudged guilty of criminal contempt for the third time and once more sentenced to 30 days' imprisonment, a $250 fine and in default thereof an additional prison term of 30 days. When the New York Court of Appeals subsequently denied leave to appeal from the judgment dismissing the petition to set aside the first adjudication of contempt,[4] Stevens—who was then in civil prison— filed his present petition for a writ of habeas corpus. Judge Weinfeld denied federal relief, but thereafter issued a certificate of probable cause and released petitioner on his own recognizance pending this expedited appeal.

## I.

 Initially, we note that by testing his first conviction in the state courts —raising basically the same issues now presented [5]—Stevens satisfied the predicate for federal habeas corpus review of his third conviction. The requirement that presently available state remedies with respect to the third conviction be exhausted does not apply where, as here, "circumstances [render] such process in-

effective to protect the rights of the prisoner." 28 U.S.C. § 2254. To require a needless, purely formal application for state court relief each time Stevens is adjudged in contempt for not answering the identical question would, as the District Court noted, "not only confine [petitioner] to a revolving door process leading nowhere, but 'invite the reproach that it is the prisoner rather than the state remedy that is being exhausted.'"

The District Court did, however, in the exercise of its discretion, deny relief because at that time Stevens could still seek Supreme Court review, by direct appeal or certiorari, of the first conviction. It is not necessary for us to pass on the propriety of that ground for decision. On the last day possible Stevens successfully applied to Circuit Justice Harlan for an extension of time in which to file a petition for a writ of certiorari. But since this appeal has not been withdrawn and our resolution of the Constitutional issues might be of some assistance to the Supreme Court, to which these same issues will be presented in the certiorari application on the first conviction, we deem it appropriate to turn to the merits, a procedure dictated by sound considerations of judicial administration and the course of state litigation on the original conviction, which is in no way antithetical to the needs of comity in our delicately balanced federal system.

## II.

 The basic and crucial attack by Stevens on all the contempt convictions is grounded on his contention that he could not constitutionally be obligated to testify before a grand jury without

---

4. An Article 78 proceeding by which Stevens seeks restoration of his title and position, with full pay and allowances retroactive to the date of his dismissal, is currently pending in the state courts. The Corporation Counsel's answer includes an offer to restore petitioner to his position with back pay, provided he testifies pursuant to his limited waiver of immunity now challenged.

5. Stevens does claim, for the first time in this petition, that the third conviction

subjects him to double jeopardy. But this contention was neither briefed nor argued here and, more important, never presented to the state courts for consideration. Insofar as the present petition is based on this claim, we hold that it is premature for failure to exhaust presently available state remedies. 28 U.S.C. § 2254; United States ex rel. Tangredi v. Wallack, 343 F.2d 752 (2 Cir. April 1, 1965); United States ex rel. Bagley v. LaVallee, 332 F.2d 890, 892 (2 Cir. 1964).

an express grant of immunity from prosecution. He brushes aside the effect of the limited waiver of immunity, claiming that his privilege against self-incrimination and right to counsel were infringed when, under the compulsion of New York law and without the benefit of proper legal advice, he executed the waiver in order to save his job.

But these contentions are, if we are to harmonize our holding with Regan v. People of State of New York, supra, prematurely advanced and cannot excuse Stevens' contumacious refusal, after repeated judicial directions to cooperate with the grand jury. The facts of Regan—not significantly distinguishable from the instant case—deserve brief mention. Regan, also a member of the New York City Police Department, was summoned before a grand jury investigating the alleged association of municipal policemen with criminals, racketeers, and gamblers. At first, he too executed a waiver of immunity, but later—after his employment with the police department had been severed—reconsidered his original waiver and refused to answer the grand jury's questions, claiming that the waiver was obtained by a "pattern of duress and lack of understanding." The Supreme Court upheld his conviction for criminal contempt, noting that the validity *vel non* of the waiver was "irrelevant" because, given a valid state immunity statute, there was no possible justification for not testifying.

That holding—its force unimpaired by intervening decisions—is dispositive of Stevens' claims. Justice Reed's exposition of the decision's rationale is significant: "The invalidity of the waiver may be made a defense to subsequent prosecution, where it would be a proper matter for disposition; it is no defense to a refusal to testify." 349 U.S. at 64, 75 S.Ct. at 588. Indeed, if Stevens' waiver is defective because he should have had the advice of counsel before signing the instrument, or his federal constitutional rights were abridged by the state requirement that he sign a waiver to preserve his public office, or if he should have been permitted to withdraw the waiver, even then, as we view the relevant provisions of the state penal law, immunity from prosecution will automatically follow.[6]

The question before us is, therefore, a narrow one: Should a witness be permitted to test the validity of a waiver of immunity prior to testifying before the grand jury? We hold that the resolution of any challenge to the waiver must abide the state's subsequent prosecution on the basis of the allegedly compelled testimony, if in fact that course is ever taken by the state. Although we recognize that the grand jury witness is thus placed in a quandary because he is not sure of the status of his waiver, this incertitude cannot bar the state from obtaining his testimony. "[T]he Constitution does not require," the Supreme Court has told us, "the definitive resolution of collateral questions as a condition precedent to a valid contempt conviction. * * * The law strives to provide pre-

---

**6.** The New York Penal Law, § 381(2) provides: "In any criminal proceeding before any court, magistrate or grand jury, or upon any investigation before any joint legislative committee, for or relating to a violation of any section of this chapter relating to bribery or any section of this article or an attempt to commit any such violation, the court, magistrate or grand jury, or the committee may confer immunity in accordance with the provisions of section two thousand four hundred forty-seven of this chapter."

Section 2447(1) of the Penal Law provides: "In any investigation or proceeding where, by express provision of statute, a competent authority is authorized to confer immunity, if a person refuses to answer a question or produce evidence of any other kind on the ground that he may be incriminated thereby, and, notwithstanding such refusal, an order is made by such competent authority that such person answer the question or produce the evidence, such person shall comply with the order. If such person complies with the order, and if, but for this section, he would have been privileged to withhold the answer given or the evidence produced by him, then immunity shall be conferred upon him, as provided for herein."

dictability so that knowing men may wisely order their affairs; it cannot, however, remove all doubts as to the consequence of a course of action." Regan v. People of State of New York, 349 U.S. at 64, 75 S.Ct. at 588.

■ Furthermore, we do not regard Regan as having been weakened, much less *sub silentio* overruled, by Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L. Ed.2d 653 (1964), which applied the Fifth Amendment's privilege against self-incrimination to the states via the Fourteenth Amendment due process clause. As we read the several opinions in Regan, the entire Court assumed, *arguendo,* that the self-incrimination clause could be utilized in state proceedings. Moreover, Malloy's relevance is limited; if Stevens is eventually prosecuted, he can, relying on that decision, question the validity of his alleged waiver of the privilege against self-incrimination, urging as he does now that he was compelled to testify or forfeit his public employment by an unconstitutional state law. But see Slochower v. Board of Higher Education, 350 U.S. 551, 558, 76 S.Ct. 637, 100 L.Ed. 692 (1956); Garner v. Board of Public Works, 341 U.S. 716, 71 S.Ct. 909, 95 L.Ed. 1317 (1951); United States ex rel. Carthan v. Sheriff, 330 F. 2d 100 (2 Cir.), cert. denied, 379 U.S. 929, 85 S.Ct. 323, 13 L.Ed.2d 341 (1964). Chief Justice Warren foresaw the availability of the point upon a subsequent prosecution based upon the allegedly compelled testimony, when he wrote, in his separate concurrence in Regan, that "substantial federal questions may arise if the petitioner is again called upon to testify concerning bribery on the police force while he was an officer *and if he is thereafter* denied immunity as to any offenses related to the investigation." 349 U.S. at 65, 75 S.Ct. at 589 (emphasis added). We are not aware that it has ever been held that the privilege conferred by the self-incrimination clause of the Constitution creates an absolute right to remain silent under all circumstances in the face of a valid inquiry into official misconduct; rather, it is a shield which pro-

tects a witness from being compelled to give testimony which could be used against him in a criminal proceeding flowing from the grand jury testimony. See Feldman v. United States, 322 U.S. 487, 499, 64 S.Ct. 1082, 88 L.Ed. 1408 (1943).

■ Finally, we note that on the very day Malloy was decided, the Supreme Court reaffirmed the basic premise on which Regan rests: valid immunity legislation permits a state to compel otherwise self-incriminating testimony. Murphy v. Waterfront Comm., 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964). Because New York's immunity statute is adequate on its face, we do not believe that Stevens had any constitutional right to refuse to testify before the grand jury. His contempt convictions, therefore, were proper.

Affirmed.