**UNIFORMED SANITATION MEN AS-
SOCIATION, Inc., et al., Plaintiffs,**

v.

**COMMISSIONER OF SANITATION OF
the CITY OF NEW YORK
et al., Defendants.**

No. 66 Civ. 4307.

United States District Court
S. D. New York.

Sept. 11, 1969.

Rabinowitz, Boudin & Standard, by
Leonard Boudin and Dorian Bowman,
New York City, for plaintiffs.

J. Lee Rankin, Corporation Counsel
of City of New York, by John J. Loflin,
Jr., and Robert C. Dinerstein, New York
City, for defendants.

OPINION

TYLER, District Judge.

Upon cross-motions for summary judg-
ment, plaintiffs' motion for such relief

is granted to the extent of ordering plaintiffs reinstated as employees of the City of New York. Plaintiffs' alternative motion for discovery is denied. Finally, defendants' motion to dismiss the complaint is denied.

This action, which was commenced in December, 1966, by plaintiffs, who are employees of the New York City Department of Sanitation at its East 91st Street Marine Transfer Station, seeks declaratory judgment and injunctive relief setting aside plaintiffs' dismissal from employment by the City of New York for refusing to answer certain questions put to them by a city investigating officer and incident to the employment of plaintiffs. Plaintiffs were granted relief by the Supreme Court of the United States, which overruled earlier decisions of this court and the Court of Appeals for the Second Circuit.[1] Pursuant to the judgment of the Supreme Court, this case was remanded to this court for further proceedings in conformity with the Court's opinion. On July 25, 1968, and as a result of the opinion of the Supreme Court, Judge Cannella entered an order directing that the original complaint of plaintiffs be reinstated, that plaintiffs be returned to their jobs and that they receive all back pay and other perquisites due them from the time of their suspension until such reinstatement. In addition, the order provided that the defendants would have the right to take appropriate action with respect to any plaintiff "who refuses to answer questions specifically, directly, and narrowly relating to the performance of his official duties" so long as he was not "required to relinquish the benefits of his constitutional privilege".

Before plaintiffs were reinstated, however, and on August 5, 1968, plaintiffs moved in this court for an order enjoining defendants from investigating plaintiffs and conducting administra-tive hearings regarding plaintiffs' employment status and providing additional discovery. Judge Pollack in a memorandum dated August 12, 1968 denied plaintiffs' motion as premature but granted them leave to serve a supplemental complaint, 287 F.Supp. 703 (S.D.N.Y.1968).

Nine days later on August 21, 1968, plaintiffs were reinstated in their jobs in the Department of Sanitation. On the same day they were called to appear at an inquiry conducted by the Deputy Administrator of the Environmental Protection Administration of the City of New York, the agency which now encompasses the Department of Sanitation. At that hearing, one of plaintiffs, Mr. Peter Lombardo, was questioned concerning the performance of his official duties as a sanitation man. Prior to the questions being put to Mr. Lombardo, the Deputy Administrator, Mathias L. Spiegel, Esq., described to Lombardo the nature of the inquiry and advised him of his constitutional rights, including the right to counsel and the right to remain silent. Spiegel further stated as follows:

"You are further advised that neither the answers you may give to the questions propounded to you at this proceeding[s], nor any information or evidence which is gained by reason of your answers, may be used against you in a criminal prosecution except that you may be subject to criminal prosecution for any false answer you may give under any applicable law including Section 1121 of the New York City Charter."

Mr. Lombardo, who was represented by counsel (as were all the other plaintiffs at this inquiry), then asserted his Fifth Amendment privilege against self-incrimination and refused to answer the questions put to him about the performance of his duties as a sanitation man. Lombardo, through his counsel, also

---

[1]. For the previous history of this interesting litigation, see the unreported opinion and order of this court by Judge Cannella dated December 27, 1966, affirmed by the Court of Appeals for the Second Circuit, 383 F.2d 364 (1967), reversed by the Supreme Court, 392 U.S. 280, 88 S.Ct. 1917, 20 L.Ed.2d 1089 (1968).

stated that he refused to answer because the inquiry was based on alleged illegal wiretapping in violation of his Fourth Amendment rights. By agreement of the parties, it was stipulated that all of the remaining plaintiffs would take the same position if they were asked the same or similar questions. Accordingly, the hearing was thereupon closed.

Because of their refusal to testify, plaintiffs were suspended from their duties with the Department of Sanitation. On August 30, 1968, charges were served upon them individually stating that their refusal to testify constituted misconduct and reflected discredit on the Department of Sanitation of the City of New York.

In accordance with Section 75 of the New York Civil Service Law, McKinney's Consol.Laws, c. 7, hearings on the charges were held before a special hearing officer, George Leisure, Jr., Esq., on October 31 and November 14, 1968. Seven witnesses were called on behalf of the Commissioner of Sanitation in support of the charges against plaintiffs. In addition, plaintiffs were given another opportunity to answer the questions which they had refused to answer on August 21, subject to substantially the same instructions and advice concerning their rights and obligations. On or about December 16, 1968, Hearing Officer Leisure filed his final report and recommendations. After making findings of fact, the hearing officer concluded that the assurance of immunity by Deputy Administrator Spiegel was coextensive with the privilege conferred by the Fifth Amendment. He reasoned that under the law it was not necessary to require a statutory grant of immunity and that neither the hearing examiner nor another responsible officer need prescribe the precise scope of immunity in his warning. He concluded that Mr. Spiegel's warning granted plaintiffs sufficient immunity with respect to the use of their answers or the fruits thereof in a criminal prosecution. Consequently, the hearing officer ruled that the charges and specifications which, in sub-

stance, were failure to answer questions relating specifically, directly and narrowly to their official duties, had been properly sustained and that the plaintiffs' failure or refusal to answer questions under the circumstances properly subjected them to dismissal. He forwarded his report to the Commissioner of Sanitation with the recommendation that all of plaintiffs be dismissed from their positions with the Department of Sanitation of the City of New York.

For reasons to be discussed hereinafter, I disagree with the ultimate conclusions reached by the hearing examiner and the Commissioner of Sanitation and determine that plaintiffs must be reinstated as City employees. As will appear from such discussion, my analysis and conclusions make it unnecessary to consider and pass upon plaintiffs' contentions that "transactional immunity" must be conferred upon them and that the underlying wiretap order and resultant wiretap were illegal. From this, it follows that no further discovery, as prayed for by plaintiffs, will be necessary.

Speaking for the majority of the Supreme Court in its opinion in this case, Mr. Justice Fortas stated:

" * * * if New York had demanded that petitioners answer questions specifically, directly, and narrowly relating to the performance of their official duties on pain of dismissal from public employment without requiring relinquishment of the benefits of the constitutional privilege, and if they had refused to do so, this case would be entirely different. In such a case, the employee's right to immunity as a result of his compelled testimony would not be at stake. But here the precise and plain impact of the proceedings against petitioners as well as of § 1123 of the New York Charter was to present them with a choice between surrendering their constitutional rights or their jobs. Petitioners as public employees are entitled, like all other persons, to the benefit of the Constitution, including

the privilege against self-incrimination. (citing cases). At the same time, petitioners, being public employees, subject themselves to dismissal if they refuse to account for their performance of their public trust, after proper proceedings, which do not involve an attempt to coerce them to relinquish their constitutional rights." 392 U.S. 280, 284–285, 88 S.Ct. 1917, 1920.

In their principal submission on these motions, defendants (hereinafter "the City") contend that they have complied with this and similar language in the Court's majority opinion, i.e. that in the proceedings before Deputy Administrator Spiegel and Hearing Officer Leisure, the City questioned plaintiffs "specifically, directly, and narrowly" regarding their duties as employees without compelling them to forfeit the benefits of their Fifth Amendment privilege. The City argues that plaintiffs have sufficient assurance of immunity and that neither their words nor the fruits thereof can be used against them in any criminal prosecution which might be brought in the future.

The provision of immunity is crucial. It would be a distinction without a difference to contend that under the Supreme Court's decision in this case the City cannot ground dismissal from employment upon refusal to sign a waiver of immunity, but that it can make refusal to speak without a grant of immunity a basis for dismissal. In both cases, the employees face dismissal for refusal to give self-incriminating testimony without a grant of immunity from the City. The form by which the employee is compelled to abandon the benefits of his Fifth Amendment privilege may have changed; the substance of the compulsion is the same.

2. It would also appear—but not nearly so clearly—that the City agrees that so-called "transactional immunity" was not conferred upon plaintiffs in the administrative proceedings; that is, the record does not clearly indicate that either

The primary question in the case, therefore, must be whether the City, in fact, granted the employees sufficient immunity. As they must, the City and its counsel agree that this assurance of immunity is not based upon a statute or ordinance.[2] The City's goal is a simple one. It would like to establish a procedure by which executive departments may speedily and effectively discipline employees suspected of improper conduct. Since the testimony of the employee himself is often necessary to the disciplinary procedure and since such testimony must be immune from later use in criminal proceedings, the executive departments would like to establish that they have the power to grant immunity to employees.

The City contends that the decision of the Supreme Court gives its Environmental Protection Administration such powers. Granting that Deputy Administrator Spiegel and Hearing Officer Leisure made every conscientious and realistic effort to follow the language of the majority of the Supreme Court in this case, I believe they may have overlooked the fact that the Supreme Court was only attempting to treat the federal constitutional issues originally posed in this litigation and argued before the Court. Nothing in the Court's language, most particularly that quoted heretofore on pages 67 and 68, supports the almost simplistic construction thereof by the City to the effect that its representatives can treat the Court's rubric as a valid substitute for provisions of New York law which confer powers to grant immunity and establish procedures for such grants. Since the Supreme Court was concerned with and speaking to federal constitutional principles, I do not understand the Court to have been authorizing the City of New York to ignore proper procedures otherwise prescribed or

New York State or the City by statute or ordinance has specifically spelled out immunity for the conduct or possible criminal violations which plaintiffs may have committed.

grants of power which must be conferred by laws promulgated by the State or City of New York. In my view, the phrase in Justice Fortas' sentence, "after proper proceedings," can reasonably be construed to mean that the City must look to state or municipal laws for the authority and procedure by which to grant immunity to public employees such as plaintiffs.

■ Historically there are two sources from which the executive derives its power to shield a prospective witness or defendant from the criminal prosecutions which might follow from self-incriminating testimony. 8 Wigmore, Evidence (McNaughton rev.1961) § 2280a–2284. One limited and seldom used method is the grant of a pardon by the appropriate executive officer. Burdick v. United States, 236 U.S. 79, 35 S.Ct. 267, 59 L.Ed. 476 (1915).

In New York, the executive power of the governor to grant pardons is constitutionally limited to post-conviction grants, N.Y.Const. Art. 4, sec. 4, and it is perfectly clear that no such executive pardon was granted or accepted in this case. The second and more usual method by which the executive may attempt to obtain self-incriminating testimony is to grant the witness immunity under powers statutorily conferred by the legislature. The scope of those powers has been directly set forth by the New York State Legislature.

In 1967, the Legislature added Chapter II–A to the Code of Criminal Procedure, including Section 619-c thereof, which specifically states that immunity may not be conferred in the absence of statute and, more particularly, may not be conferred by someone other than persons in authority as defined in that particular section.[3]

■ In the light of this comprehensive statute of the State of New York, I conclude that the conceded fact that neither Deputy Administrator Spiegel nor Special Hearing Officer Leisure was authorized by statute or ordinance to confer immunity is fatal to the proceedings heretofore had in this case.

Furthermore, the Court of Appeals of New York has stated that: "Complete immunity from prosecution may be obtained by a prospective defendant, or any witness, only by strict compliance with the procedural requirements of our immunity statutes properly enacted (Matter of Doyle, 257 N.Y. 244, 257–268, 177

---

3. Paragraph 1 of Section 619-c of the Code of Criminal Procedure lays out the basic policy:

"In any investigation or proceeding where, by express provision of section six hundred nineteen-d of this chapter or any other statute, a competent authority is authorized to confer immunity, if a person refuses to answer a question or produce evidence of any other kind on the ground that he may be incriminated thereby, and, notwithstanding such refusal, an order is made by such competent authority that such person answer the question or produce the evidence, such person shall comply with the order. * * *"

The second paragraph deals with the scope of the immunity granted under the statute. The third paragraph defines "competent authority" and subsection (e) thereof is the only portion dealing with executive departments such as the Department of Sanitation:

"'Competent authority' as used in this section means: * * * (e) The head of a state department or other state agency, a commissioner, deputy or other officer before whom a person is called to answer questions in an inquiry or investigation, upon twenty-four hours prior written notice to the attorney-general of the state of New York and to the appropriate district attorney having an official interest therein.

Provided, however, that no such authority shall be deemed a competent authority within the meaning of this section unless expressly authorized by statute to confer immunity."

Further, paragraph 4 states

"Immunity shall not be conferred upon any person except in accordance with the provisions of this section."

Section 619-d deals with those proceedings and offenses in which immunity can be granted. Parenthetically, it should be noted that this is a "transactional immunity" section, i. e. it purports to list the specific offenses for which immunity can be conferred in accordance with the provisions of Section 619-c.

N.E. 489, 493–497, 87 A.L.R. 418, Opinion by Cardozo, Ch. J.), or by virtue of immunity provisions in our State Constitution (e. g., Art. XIII, § 3)." People v. Laino, 10 N.Y.2d 161, 173, 218 N.Y.S. 2d 647, 657, 176 N.E.2d 571 (1961). Surely, the Supreme Court in this case did not mean to suggest that the defendants should ignore New York law and procedures governing the conferral of immunity so long as they do not offend the federal constitution. The Supreme Court, after all, is well aware of the immunity statutes which have existed in this state and has recognized their crucial significance in other litigation. See, e. g., Regan v. People of State of New York, 349 U.S. 58, at p. 62, 75 S.Ct. 585, at p. 587, 99 L.Ed. 883 (1955); Stevens v. Marks, 383 U.S. 234 at pp. 241–242, 86 S.Ct. 788, 15 L.Ed.2d 724 (1966).

■ Moreover, by asking this court to dismiss the plaintiffs' complaint on the ground that the proceedings by the City after the opinion of the Supreme Court in this case are proper, the defendants in substantial effect are asking a federal court to approve and thereby indirectly confer immunity upon witnesses, a state and local matter of primary concern to the State of New York and the City of New York. In my opinion, sound principles of federalism would be strained if not broken by such a result.

That would be all there is to the matter were it not for a specific argument made by the City based upon its interpretation of the Supreme Court's decision in Murphy v. Waterfront Commission of New York Harbor, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964). In *Murphy*, of course, the Supreme Court set aside the contempt conviction of Murphy in a New Jersey State Court, holding that if the witness answered questions put to him by representatives of the Waterfront Commission, which was empowered by statutes of New York and New Jersey to give immunity only against state prosecution, that witness would also receive immunity against federal prosecution. By analogy, then, the City has argued that *Murphy* stands for the proposition that a federal court by fiat can confer immunity upon a witness in another jurisdiction absent specific legislative authority therefor. Despite the ingenuity of this argument, I reason that the circumstances in *Murphy* are clearly distinguishable from those in this case. To begin with, in *Murphy* the interstate compact between New York and New Jersey conferred immunity powers upon the Waterfront Commission—i. e. the Supreme Court was not being asked to create an immunity against state or local prosecution. Furthermore, in *Murphy* it is obvious that the Supreme Court was properly exercising its supervisory power over the administration of federal criminal justice. Thus, as plaintiffs here argue, *Murphy* presented a far different question.

■ Since I conclude that the procedures here used were ineffective to the extent that the Deputy Administrator was not a "competent authority" to confer the necessary immuuity under state law, the arguments of the parties centering on the issue of transactional immunity need not be resolved. Similarly, since this view requires that summary judgment be granted to plaintiffs reinstating them in their position as employees of the Department of Sanitation of the City of New York, plaintiffs' application for discovery on the wiretap issue becomes academic.[4]

An order and judgment should be submitted to this court on notice consistent with this memorandum. In this connection, I note that the judgment in favor of plaintiffs will be entered without prejudice to any further proceedings which the City may wish to undertake in conformity with the principles of federal constitutional law enunciated by the Supreme Court in this and other cases and in compliance with New York law.

---

4. In any event, I consider myself bound by the ruling of the Court of Appeals on the wiretap issue. That Court's decision on that issue, which I regard as correct, is the law of this case.