*208 Chief Judge Desmond.
The appeal is by our leave from an Appellate Division affirmance of a Kings County Court order in a civil proceeding adjudging appellant guilty of a criminal contempt in violation of subdivision 5 of section 750 of the Judiciary Law, the sentence being imprisonment for 30 days and a $250 fine.
In February, 1962 we handed down People ex rel. Cirillo v. Warden (11 N Y 2d 51) where in a habeas corpus proceeding brought by Cirillo we declared valid a similar adjudication, agreeing with the courts below in that prior proceeding that Cirillo’s statements before a Grand Jury on November 1, 1961, after immunity granted, that he did not remember what he had done or where he had gone on the afternoon of August 20, 1961, had been properly held to be a contempt of court. After our affirmance Cirillo served 30 days in jail and paid the fine. In the meantime and on December 5, 1961, about a month after the Appellate Division decision (14 A D 2d 875) and while the appeal in the previous proceeding was pending (argued but not decided) in this court, he was brought before the same Grand Jury and questioned again as to his whereabouts, acts and associations on that same day of August 20, 1961. As we shall show in a little more detail later on in this opinion, he gave on this December 5, 1961 Grand Jury appearance about the same “ don’t remember ” answers as on November 1, 1961. Thereupon he was again charged with contempt and after a hearing before a County Judge was again found guilty and again sentenced to serve 30 days and pay a fine of $250, the maximum sentence (Judiciary Law, § 751).
This appeal produces two questions of law: (1) Whether the answers given by appellant on December 5 were so evasive that we may say, as we did on his earlier appeal, that it was reasonable to conclude “ that relator was in fact although not in form refusing to testify as to what he did and where he went on that afternoon ” (11 N Y 2d 51, 54, supra); and (2) if so, whether this refusal on December 5 to testify was a mere continuation of the similar refusal on November 1, 1961 for which he had already been punished and thus not a new contempt.
As to the first issue it is clear that since, as we previously held, the failures to remember on November 1, 1961 were properly held to constitute contempt then the recurrence of the amnesia on *209 December 5 could be similarly treated. Beginning the questioning, the Assistant District Attorney reminded Cirillo that this was the same Grand Jury before which he had testified in November and that he was still under oath and still had immunity. This questioning shows that Cirillo’s attorney was in an anteroom and that the prosecutor informed Cirillo that if he wished he could consult with his attorney before answering any question. The Assistant District Attorney then told Cirillo that he was going to ask him the same questions asked him on November 1 as to his whereabouts on the afternoon of August 20, 1961. Cirillo in response to a question said that if asked these questions again he thought his answers would be the same. The prosecutor then went through about the same questioning as on Cirillo’s earlier appearance. As we were told on both appeals, the Grand Jury was investigating an attempted assault or attempted homicide on one Gallo on August 20, 1961 and the murder of one Magnasco on October 4, 1961. During the second or December 5 questioning Cirillo stated, as he had on the earlier occasion, that he recalled what he had done on Saturday evening, August 19, and Sunday morning, August 20, and that he recalled having lunch at home on that later day and that he remembered that he had not gone to church that morning. He seems to have given a little more information on the second questioning as to names of people he knew and testified that he did not see Gallo that day. On both occasions he testified that he learned of the Gallo assault at about 8 o’clock on the evening of August 20 by reading about it in a newspaper and he remembered the time and place that he bought the newspaper and that this was after he had phoned his wife and that she had told him that the police were looking for him. On both occasions he remembered the time of two telephone calls to his wife. On both occasions he testified that he did not surrender to the police after he learned that they were looking for him and that the reason for this failure was his fear of the Gallos. The significant thing is that on both times he appeared before the Grand Jury Cirillo professed to have no recollection of what he did between 1:00 p.m. and 6:00 p.m. on August 20 during which period there occurred the assault on Gallo which the Grand Jury was investigating. Our conclusion is that Cirillo’s assertions of such failure of memory were properly held to be refusals to testify.
*210 This brings us to the second question as to whether he could be proceeded against and punished again. There is no direct authority in this court on the question of whether such successive refusals to answer the same questions constitute one offense only. Several cases in other States say that such recurring refusals to answer are separate and distinct contempts (Ex Parte Stice, 70 Cal. 51, 58 [1886]; State v. Kasherman, 177 Minn. 200, 202 [1929], cert. den. 280 U. S. 602; Matter of Ward, 295 Mich. 742, 747 [1940]; see Williams v. Davis, 27 Cal. 2d 746, 751 [1946]). In Matter of Amato (204 Misc. 454), a 1953 Supreme Court decision written by Justice Benveuga and apparently not appealed from, it was flatly held that when a witness is brought in for questioning on a subsequent occasion (as distinguished from successive similar questions on the same occasion) the second refusal to testify is a new contumacious act and is punishable as a separate and distinct contempt. Matter of Amato seems to be the only reported New York case but this practice of calling the same witness back and asking the same questions has apparently been followed for years. The distinction between repeated questioning on the same occasion and questioning on a later date may seem arbitrary but there is good basis for it. When a witness on the same appearance is asked a series of identical and similar questions and refuses to answer any of them this may reasonably be considered to be one continuous refusal, especially when, as in People v. Riela (7 N Y 2d 571), the repeated refusals are on one single ground, that is, a claim of privilege. Riela was consistent with Yates v. United States (355 U. S. 66, 73).
Every citizen is subject to be recalled as a witness before the same Grand Jury or investigating body. There is no reason why one should get immunity as to subsequent contempts by serving a term of imprisonment and paying a fine. The State has a right to his truthful testimony and has a right to try again to get it after he has once been found guilty of contempt and punished. The Riela opinion (7 N Y 2d 571, supra) in this court pointed out that Biela could not be forced into 17 different con-tempts by 16 repetitions of the same or nearly the same question and that when he made it clear that he would not answer questions about Appalachin on the ground of self incrimination his subse•pient refusals were mere reassertions of the privilege. The *211 Riela opinion carefully distinguishes People v. Saperstein (2 N Y 2d 210, cert. den. 335 U. S. 946). We had held that Saperstein was validly convicted of five different contempts committed on the same day when he refused to testify or refused to remember who were the participants with him in five separate wire-tapped telephone conversations. Saperstein did not claim privilege but, like the present appellant Cirillo, insisted he could not remember.
Not cited by counsel and not immediately relevant, but interesting as to the public policy question, are the two ValentiAppalachin cases (People ex rel. Valenti v. McCloskey, 6 N Y 2d 390; 8 N Y 2d 959). The Valenti brothers were committed to jail until they should answer pursuant to a different statute (Civ. Prac. Act, § 406, subd. 3) because of contempt consisting of the giving of evasive and incredible answers at hearings before the State Commission of Investigation. On the earlier Valenti appeal we upheld the commitment of Costenze Valenti because his answers were evasive, but held that the answers of his brother were sufficient. A year later Costenze Valenti was before us again, having at his own request appeared again before the commission and given some different answers. Affirming the Appellate Division we held on that second appeal (8 N Y 2d 959, supra) that his new answers were not such palpable fabrications as to amount to continued refusals to answer. It is implied in this second Valenti decision that if Costenze had persisted, on his second questioning, in the same answers given at first he could have been kept in jail forever. This was under a different statute and the second appearance was at the request of the witness but there was present the basic idea that he could be kept in jail for repeated refusals to answer.
Of course, contempt adjudications based on the same refusals or evasions can be so numerous or onerous as to deny due process to the person questioned. Solution of that problem must await an appeal presenting the particular issue.
The order should be affirmed.