16

LIFE MUSIC, INC., Plaintiff,

v.

BROADCAST MUSIC, INC., American Society of Composers, Authors and Publishers, Sesac Inc., Radio Corporation of America, National Broadcasting Company, Inc., Columbia Broadcasting System, Inc., Columbia Records, Inc., Blackwood Music, Inc. (named incorrectly in the original complaint as Columbia Music Publishing Company), Master Records, Inc., and April Music, Inc. (named incorrectly in the original complaint as Okeh Music Publishing Company), Defendants.

Civ. A. No. 106–159.

United States District Court
S. D. New York.

Aug. 19, 1966.

**20**

O'Brien, Driscoll & Raftery, New York City, for plaintiff.

Cahill, Gordon, Reindel & Ohl, New York City, for RCA, NBC.

Rosenman, Goldmark Colin & Kaye, New York City, for BMI.

Cravath Swaine & Moore, New York City, for CBS.

## OPINION

EDELSTEIN, District Judge.

■ This is a motion pursuant to Rule 37(b) (2) of the Federal Rules of Civil Procedure for an order dismissing this action and for "such other and further relief as to the Court may seem just and proper," by reason of plaintiff's failure to comply with this court's order dated Juy 17, 1964.[1] That order sustained plaintiff's objection to the defendants' seventeenth interrogatory but overruled the objections to Interrogatories 1 through 16. It required that plaintiff "responsively answer each of Interrogatories 1 to 16 inclusive * * * and the subdivisions of each of said Interrogatories, separately, definitely and fully in writing under oath as provided by Rule

1. This case has been assigned to this court for all purposes pursuant to Rule 2 of the General Rules of this Court.

2. Defendants have stipulated that the following "Supplemental Answers" by the plaintiff comply with the court's order of July 17, 1964:

33 of the Rules of Civil Procedure. * * * " The order also provided "that plaintiff may apply upon notice to extend such time [the time in which to answer] upon an affirmative showing of the need therefor." The plaintiff did not apply for additional time and filed its answers to Interrogatories 1 through 16 on December 14, 1964. Thereafter, on January 28, 1965, defendants brought on this motion to dismiss for failure to comply with the court's order of July 17, 1964. Defendants, in effect, contended that plaintiff's answers were unresponsive to the questions and did not comply with the court's order. On oral argument the court granted plaintiff leave to file supplemental answers, which were filed on March 9, 1965. Defendants moved to strike the supplemental answers, or, in the alternative, to tax costs and attorneys fees incurred in their January motion on the grounds that contrary to the court's authorization the plaintiff had filed a new integrated set of answers rather than simply supplemental answers. This court denied the motion to vacate the supplemental answers and reserved decision on the motion to tax costs and attorneys fees. After examining the transcript of the proceedings before this court on February 4, 1965, the court is persuaded that conceivably there may have been some ambiguity as to what was meant by the term "supplemental." Defendants' motion, therefore, to tax costs and attorneys fees in regard to the supplemental answers is denied.

■ On April 14, 1965, defendants, in effect, renewed their motion to dismiss the complaint for failure to comply with this court's order of July 17, 1964, based on the supplemental answers filed on March 9, 1965.[2] In addition to detailed

(a) The answer to Interrogatory No. 11;
(b) The answers to subdivision (II) only, of Interrogatories 3, 4, 5, 6, 7, 8, and 13, (asking as to each of those interrogatories the identity of each person and each document consulted in preparing the answers).

allegations that the plaintiff had failed to comply with the court's order of July 17, 1964, defendants also urged that the harsh sanction of dismissal was appropriate because plaintiff's refusal to answer was willful, deliberate, and involved a complete lack of good faith rather than any inability to comply. In particular defendants point to plaintiff's answers to Interrogatories 3 and 5.

Interrogatory No. 2 seeks the title of compositions in which the plaintiff had any public performance rights, and Interrogatory No. 3 seeks, "with respect to each composition listed in response to Interrogatory 2, state:

"(a) (i) the name or names and address or addresses of the authors and composers of such composition, (ii) if any such name is a pseudonym, the true name of such author or composer, (iii) the date such composition was composed;

"(b) (i) the date of copyright of such composition, (ii) the form or forms of copyright of such composition [i. e. common law or statutory], (iii) if the copyright was registered in the Copyright Office, the year or years in which registered and the registration number or numbers;

"(c) (i) whether the plaintiff was the copyright proprietor of such composition on each date listed in response to Interrogatory 1 and (ii) in each case in which the plaintiff was not the copyright proprietor of such composition on any such date, the name and address of the copyright proprietor thereof on such date; * * *

"(f) in each case in which plaintiff was the copyright proprietor of such composition on *each* of the dates listed in response to Interrogatory No. 1;

"(i) whether any person other than the plaintiff had any rights, or the right to grant to others any rights, of the kind specified below [i. e., public performance rights, rights to print, sell, arrange, and record] in such com-

position on any of the dates listed in response to Interrogatory 1, and, if so, in each case (A) the name and address of such person, (B) (i) the rights such persons had and (ii) whether such rights were exclusive, (C) the date or dates on which such other person obtained or retained such rights, (D) the name and address of the person from whom such rights were obtained or retained, (E) the means (whether by assignment, license, etc.) by which such other person obtained or retained such rights, (F) whether such rights were obtained or retained in writing and, if so, identify such writing. * * * "

In answer to Interrogatory No. 2 plaintiff states that at the times specified in answer to Interrogatory No. 1 plaintiff had public performance rights in each of the 197 musical compositions which titles were referred to and listed in Exhibits 2833, 2833A and 2833B, copies of which were annexed to the answer. One of the songs listed on the exhibit was the "Super Song" ("also known as Supercalafajalistickespialadojus"). In response to Interrogatory No. 3 plaintiff answered:

"3. (I) With respect to each of the 197 compositions listed in answer to Interrogatory No. 2, the said Exhibits 2833, 2833A and 2833B set forth the title, the author, the copyright broadcasting clearance date, which also is the approximate year of copyright, and the approximate date of composition. (The date of composition is necessarily earlier than the date of copyright.)

The plaintiff owns the copyrights in said compositions, and there has been no change in status since 1954.

*Further information pertaining to these copyrights or assignments thereof are only available to the plaintiff by a prohibitively expensive search in the U. S. Copyright Office, which plaintiff is unable to undertake or to have made.* * * * " (Italics added.)

The plaintiff's answer thereafter details its assertion of the prohibitive cost of such a copyright office search.

The only information that could be deemed set forth in response to Interrogatory No. 3 (by reference to the relevant exhibits) regarding the "Super Song" is that the composer and author is "Don Fenton" and "Patricia Smith" and that it appeared in the B.M.I. "16 December 1949 Bull" which answer 3 explains as "the copyright broadcasting clearance date, which is also the approximate year of copyright, and the approximate date of composition. (The date of composition is necessarily earlier than the date of copyright.)"

On February 25, 1965, Life Music, Inc., together with Mr. Barney Young (Life Music's president) and Miss Gloria Parker commenced an action in this District Court against numerous defendants (including Broadcast Music, Inc.). That complaint alleges, in effect, that the plaintiffs in that action, (Life Music, Young and Miss Parker) have the exclusive rights to the copyright of the "Super" composition and that the copyright "is duly registered in the office of the Register of Copyrights under registration #E pub. 58001 following publication September 24, 1951 and under E unpub. 187738 following the deposit of one copy December 12, 1949 and filed in the Notice of Use Indexes in the office of the Register of Copyrights in Vol. 21, page 417." Par. 12 of that complaint alleges that Barney Young and Gloria Parker composed the song in 1949. Paragraphs 2 and 3 allege that Barney Young resides at 360 Cabrini Boulevard in Manhattan and that Miss Parker resides at 354 Vermont Street in Brooklyn. Paragraph 15 alleges that the plaintiffs in that action, i. e., Young, Miss Parker and Life Music are the exclusive owners of all of the rights to print, publish, reprint, arrange, copy, perform, mechanically reproduce and vend that composition. The caption of the action recites that Barney Young is also known as

"Don Fenton" and that Gloria Parker is also known as "Patricia Smith."

Thus, approximately ten days *before* Mr. Young answered Interrogatory No. 3 he had (along with Life Music and Miss Gloria Parker) filed a separate action, 65 Civil 584, in this court, which gave, *inter alia*, the names and addresses of the authors and composers of that composition (information called for in Interrogatory 3(I) (a) (i)), and stated that the names of the composers and authors (Don Fenton and Patricia Smith) were pseudonyms for Barney Young and Gloria Parker (information called for in Interrogatory 3(I) (a) (ii)). Similarly the new complaint gives: the date of composition of the "Super Song" as the year 1949 (information called for in Interrogatory 3(I) (a) (iii)); the date and forms of the copyright of that composition (information called for in Interrogatories 3(I) (b) (i) & (ii)) and the years of registration and registration numbers in the Copyright Office (information called for in Interrogatory 3(I) (b) (iii)). The February 25, 1965, action also alleges that Life Music, Barney Young and Miss Parker owned the copyright to that composition (information called for in Interrogatory 3(I) (c)) and in effect states that parties other than Life Music, (i. e., Barney Young and Miss Parker) had rights in the "Super Song" giving information and details called for in Interrogatories 3(I) (f) (i) (A) & (B).

The new complaint, 65 Civ. 584, clearly demonstrates that Mr. Young's affidavit, filed on March 17, 1965, p. 13, to the effect that plaintiff answered Interrogatory 3 "to the best of its ability" and that the answer in the interrogatory "Further information pertaining to these copyrights or assignments thereof are only available to the plaintiff by prohibitively expensive search in the U. S. Copyright Office, which plaintiff is unable to undertake or to have made" were utterly false in regard to the "Super Song." The court finds that the plain-

tiff, Life Music (through its president Barney Young) having detailed information regarding the "Super Song" did not provide that information in response to Interrogatory No. 3. Plaintiff (through its president Barney Young) wilfully, deliberately and in bad faith refused to comply with this court's order of July 17, 1964.

The second major allegation of willful failure to comply relates to plaintiff's answers to Interrogatory No. 5. That interrogatory asks plaintiff to:

"State whether any person made any claim that was outstanding in and after February 1954 to be the copyright proprietor of, or to be the holder of, any rights, or of the right to grant to others any rights, of the kind specified below [i. e., public performance rights, rights to print and sell copies of the compositions, etc.] or of any other rights or interests( including any restrictions) in, any of the compositions listed in response to Interrogatory 2. * * *"

In its original set of answers served on December 14, 1964, the answer to the first portion of Interrogatory No. 5 was "plaintiff recollects none."

In the motion to dismiss, filed on January 28, 1965, defendant B.M.I. affirmed, inter alia, that plaintiff's president, Mr. Barney Young, knew of claims being made in this court by a Miss Parker (an associate of Barney Young) involving many of the same compositions which plaintiff in this action (Life Music, Inc.) was claiming.

"Young sat by Miss Parker's side in lawsuits which she brought against BMI and others, which are still pending, and he [Barney Young] assisted her in asserting claims to rights in [the relevant] compositions. * * *" Affidavit of Lawrence Eno, dated January 27, 1965, p. 24.

In spite of this uncontroverted allegation the plaintiff's supplemental answer filed on March 9, 1965, repeats the same answer "the plaintiff recollects none." The answer then goes on to indicate that the depositions taken of the plaintiff between 1956 and 1960 more accurately reflect the recollection of the plaintiff "at the time said deposition was taken." It does not in any way seek to modify the plaintiff's present recollection, i. e. "plaintiff recollects none."

The subsequent uncontroverted affidavit submitted in behalf of defendant Columbia Broadcasting System, Inc., by its attorney Bruce Bromley, affirms that one of the actions referred to in the January 27, 1965, affidavit:

"is Gloria Parker v. William S. Paley, 62 Civ. 953. My firm represents the defendant in that action and I have been in charge of that case for my firm. Miss Parker purports to appear pro se in that action but Young, who is a graduate of a law school, has consistently appeared with her in that suit and is her adviser and counselor therein.

"In that action, Miss Parker filed in this Court certain Supplemental Answers to defendant's Interrogatories sworn to by her October 25, 1962. In those Supplementary Answers Miss Parker claimed, inter alia, that she, and not Life Music, owned the performance rights in about 45 of the compositions which Life Music has referred to in its Supplementary Answer of March 8, 1965, to Interrogatory No. 2. Those 45 compositions were listed on page 8 and 9 of Miss Parker's Supplementary Answers. With respect to them she said at pp. 54–55 of those Supplementary Answers:

'I believe that I have all the interest in all my songs * * * with the exception of songs enumerated on pages 8 and 9. With reference to these songs separately enumerated, as of October 1, 1956 Life Music Inc. owns the copyright. The performing rights were vested in me by Broadcast Music Inc. in accordance with a written contract between myself and BMI of date October 1, 1952.'

"At page 57 of her Supplemental Answers, Miss Parker repeated:

'The entity which copyrighted these songs separately enumerated on pages 8 and 9 was Life Music, Inc. unless otherwise indicated or unless they are a common law copyright. I am the owner of the full performance rights in these songs in accordance with my BMI written contract of October 1, 1952.' " (Italics in the original.)

To a similar effect see Id. at 59.

The affidavit of Mr. Bromley goes on to charge that: "Young knew of these answers. He has consistently assisted plaintiff [Miss Gloria Parker] in that litigation and did so in connection with motions made by defendant Paley [represented by Mr. Bromley] to dismiss that action based upon her several answers to interrogatories, including the Supplemental Answers referred to above. * * Young knew the answer to Interrogatory 5 but refused to give the information because it was damaging to the plaintiff's [Life Music's] case." To these most serious charges Mr. Young's affidavit filed May 6, 1965, replies, *inter alia,*

"Whether the answer to this interrogatory [Interrogatory 5] is made in bad faith is not the issue on this motion, for there is an appropriate time and place to raise such an issue. The question before the Court is whether the answer is responsive to the interrogatory, and it is inconceivable how that can be denied. * * * Furthermore

deponent again points out that since the answer is responsive, the good faith or accuracy of plaintiff's answers is not the issue on this motion, for there is another time and place for such a question to be determined. The sole issue here is whether the plaintiff has responded to the interrogatory." Affidavit of Barnard Young filed on May 6, 1965, pp. 21–22.

Mr. Barney Young's contention that a false "I don't remember" answer is nevertheless responsive and therefore not in violation of the court's order of July 17, 1964, is exactly wrong. An "I don't remember" answer is, in effect, a representation that the party has no present recollection and is therefore unable to testify. If that representation is false (that is, the party does in fact have a present recollection), an "I don't remember" answer is nothing more than a refusal to answer. See e. g., United States v. Appell, 211 F. 495 (S.D.N.Y. 1913) ("[a] court ought not to be put off by transparent sham, and the mere fact that the witness gives some answer cannot be an absolute test.") (L. Hand, D.J.); Second Additional Grand Jury, etc. v. Cirillo, 12 N.Y.2d 206, 209, 237 N.Y.S.2d 709, 711, 188 N.E.2d 138, 140, 94 A.L.R.2d 1241 ("Cirillo's assertions of such failure of memory were properly held to be refusals to testify."); cf. Richardson v. United States, 273 F.2d 144, 147–149 (8th Cir. 1959); United States v. McGovern, 60 F.2d 880, 888–889 (2d Cir. 1932).[3]

3. On oral argument plaintiff has asserted that since Miss Parker's claims were not specifically addressed to life Music, but rather to the defendants in the actions which she brought, plaintiff was not required to include those claims in its answer to Interrogatory No. 5. It is difficult to understand how plaintiff corporation could not have been aware of Miss Parker's claim when plaintiff's president, Mr. Barnard Young, was aware of those claims. If, on the other hand, plaintiff is deemed to have the knowledge of its president (and therefore knowledge of Miss Parker's claims) it seems hardly

significant that those claims were addressed to defendants in other lawsuits. Plaintiff was aware of the serious claim of bad faith made on January 28, 1965. Nevertheless, when the supplemental answers were filed on March 9, 1965, the same answer was repeated. No effort was made to limit the answer to claims specifically addressed to Life Music, nor was any effort made to give alternative answers. On the contrary, Mr. Young's affidavit affirmed that "since the answer is responsive, the good faith or accuracy of plaintiff's answers is not the issue on this motion. * * *" Taking this

■ The court finds that the plaintiff, Life Music, through its president, Barney Young, having knowledge that Miss Gloria Parker had made a claim that was outstanding in and after February 1954 to be holder of the public performance rights in approximately 45 of the compositions referred to in response to Interrogatory No. 2, did not provide that information in response to Interrogatory No. 5. Plaintiff (through its president, Barney Young) did not answer Interrogatory No. 5 in good faith but rather willfully and deliberately refused to comply with this court's order of July 17, 1964.

Although the court fully agrees with the defendants' contention that plaintiff willfully and deliberately refused to answer Interrogatory No. 3 (with respect to the "Super Song") and Interrogatory No. 5 (with respect to claims made by Miss Parker) the court cannot accept the blanket allegation that all of the defendants' numerous other failures to answer interrogatories were equally grounded in bad faith. The court, therefore, will deal with each answer to each of the interrogatories separately.

■ Interrogatory No. 1 asks that the plaintiff "state each date in and after February 1954 on which plaintiff solicited * * * any person to take a performance rights license from it." Plaintiff's supplemental answer in effect indicates that written solicitations were mailed on or about February 24, 1954, on or about March 17, 1954, and on or about November 15, 1954. Those answers comply with the court's order of July 17, 1964. Plaintiff's answer does not end there, however, it also goes on to assert that "in addition, oral solicitations were also made on behalf of plaintiff *at various times,* commencing approximately January 1, 1954 and continuing up until the date of the initiation of this litigation." (Italics added.) This paragraph of the answer to Interrogatory No. 1 is not in compliance with the court's order of July 17, 1964. Plaintiff's answer to Interrogatory No. 1 also states that during the course of the taking of its president's deposition thousands of exhibits were marked "many of which pinpoint the dates or the approximate dates when the foregoing solicitations, both written and oral, were made. In connection with said exhibits plaintiff specifically refers to: * * * [at this point plaintiff lists several hundred exhibits and gives some descriptive material relating to the content of the exhibits]." This portion of plaintiff's answer to Interrogatory No. 1 tells the defendants, in effect, that if they desire they may hunt through the listed documents and find the dates of solicitations for themselves. Defendants properly contend that this is nothing more than a gigantic "do it yourself" kit. This portion of the answer to Interrogatory No. 1 is not in compliance with the court's order of July 17, 1964. Plaintiff in effect urges that its failure to comply with the court's order is excusable in that (a) plaintiff has neither the funds nor office staff required to make a compilation from the exhibits available to the plaintiff; (b) that the defendants may ascertain the answers to the interrogatory from the testimony given by the plaintiff's president on deposition (as well as the above exhibits); and (c) that plaintiff having no independent recollection of the testimony is unable to afford a transcript of the deposition and that defendants have refused to file that transcript with the court. Somewhat similar arguments were made by plaintiff when it first objected to the interrogatories. The arguments were rejected then, and although now doing service as excuses for failure to comply, they fare no better.

■ It may be that the entity "Life Music" is impoverished. But the fact

record as a whole the court is convinced that plaintiff, Life Music, through its president, Barnard Young, willfully,

deliberately, and in bad faith refused to comply with this court's order of July 17, 1964.

that some expense or burden is involved in the answering of complex interrogatories (assuming that those interrogatories are relevant) does not excuse the failure to answer. A party normally must be expected to bear the expense incident to litigation which it has commenced, especially where the interrogatories seek to determine contentions and information concerning the operation of its business relevant to litigation. Although the court is well aware that under some circumstances grossly excessive expense could work an injustice on an impoverished claimant, this is not the case here. Defendants affirm, and plaintiff through Mr. Young has not denied, that substantial sums of money were paid to plaintiff over a period of several years by Broadcast Music, Inc., while there was a contractual relationship between them. After detailed reference to specific receipts, disbursements and bank balances of the plaintiff Life Music, the defendants conclude "In summary, of the plaintiff's total receipts of about $62,760 between December 1953 and February 1954, about $52,250 was immediately disbursed to Messrs. Young and Fox [plaintiff's vice-president] their associates and other controlled corporations and unidentified cash. Whereas in 1953 Messrs. Young and Fox drew aggregate officers' salaries of $4,163, in 1954, on lower gross receipts, they drew aggregate salaries of $13,100 [citation omitted]. In addition, plaintiff in 1954 claimed about $13,000 of its expenditures was for travel, entertainment and 'professional contact and plugging expense' [citation omitted]. On audit, almost 60% of this sum, or $7,500, was disallowed as 'inadequately substantiated and/or considered personal. * * *' In short, at the end of its affiliation with BMI, plaintiff had virtually no funds (the secondary records hereto show that what it received during the affiliation went largely into other corporations controlled by Messrs. Young and Fox and to unidentified cash payments [over $90,000, in

unidentified cash payments were made in the period 1951–53 alone]). When at the end of that affiliation plaintiff received $60,000 from BMI, it immediately channeled the bulk of that money into the pockets of Messrs. Young and Fox and their other corporations—and did so even before plaintiff purported to enter the performance rights licensing business at the end of February 1954. * * * If the plaintiff is unable to finance this law suit, then they [Messrs. Young and Fox] disabled it from doing so." Affidavit of Lawrence Eno, dated June 30, 1964, pp. 11–12.

These allegations have never been effectively answered and since there can be no question that plaintiff's president, Barney Young, has been the driving force in this litigation, he is, as defendants quite properly contend, in the position of having slain his parents and then pleading for mercy on the ground that he is an orphan.

■■■ Plaintiff's second argument is that the defendant may ascertain the answers to the interrogatory from the testimony given by the plaintiff's president (as well as the exhibits which are now available to both parties). But the point of interrogatories is to obtain a party's admissions and contentions under oath and to narrow the issues in the case. Documents and testimony are not infrequently subject to varying interpretations and therefore simply referring defendant to whatever it might find therein does not comply with the court's order which required the plaintiff to "responsively answer each of Interrogatories 1 to 16 inclusive * * * and the subdivisions of each of said Interrogatories, separately, definitely, and fully in writing under oath. * * *"

■■■ Finally, plaintiff contends that it has no independent recollection of the testimony given on deposition, it is unable to afford a transcript of the deposition, and that the defendants have refused to file that transcript with the

court. The reason for plaintiff's inability to pay for an office staff and transcripts has been detailed supra. The defendants' failure to file the transcript has been pursuant to stipulation entered into by both parties to the effect that filing would be waived. In any event, the defendants have offered to allow plaintiff to examine the transcript of his deposition if its president Barnard Young will represent, under oath, that information sought in the interrogatories is contained in that deposition. Although plaintiff's counsel indicated, on the record, that such an affirmation would be made, it has not been.

The plaintiff has not justified its failure to comply with this court's order of July 17, 1964.[4] Pursuant to Fed.R.Civ.P. 37(b) (2) the plaintiff will be precluded from proving any solicitations except those occurring on or about February 24, 1954, March 17, 1954, and November 15, 1954.

 Interrogatory No. 2 asks the plaintiff to state "with respect to each date listed in response to Interrogatory 1, the title of each composition in which plaintiff had any public performance rights on such date." Plaintiff's answer asserts that it "had public performance rights in each of the 197 musical compositions whose titles are referred to and listed in Carl Haverlin's letter of March 1, 1954 and the attachments thereto, which were marked respectively Exhibits 2833, 2833A and 2833B. * * * Copies of said exhibits are attached hereto. * * * Plaintiff expressly limits its claim in this action to those 197 titles referred to and listed in said exhibits. * * *" Defendants object to this answer on the grounds: that because the names are not actually listed in the answer itself the answer is not responsive; that the phrase "referred to" may mean something different than the phrase "listed" and finally that 197 titles are not in fact listed on the relevant exhibits.

Defendants' objection is not without merit. In this particular instance, however, the other exhibits have been annexed to the answering papers. There does not appear to be any ambiguity about what answer is intended. Plaintiff, moreover, has, on oral argument, indicated that the phrase "referred to" means nothing other than "listed" and it was not plaintiff's intention to incorporate, indirectly, any other song titles. The court's own independent count of the titles listed in Exhibits 2833, 2833A and 2833B indicates a total of 192 titles. The exact number of song titles may not be significant. In any event, plaintiff states that it does not recollect having performance rights in any other titles. The plaintiff is also limiting its claim in this action to the listed titles. The answer does not comply with the court's order of July 17, 1964, but in order to avoid any possible danger of elevating form over substance the answer will be treated for the purpose of this motion as though the titles were actually listed in the answer, subject to the condition that the plaintiff perform what it claims is the ministerial task of listing the titles of the compositions (contained in Exhibits 2833, 2833A, and 2833B) in an amended answer to Interrogatory No. 2 under oath in accordance with Fed.R.Civ.P. 33. That amended answer should be filed on or before October 17, 1966. Pursuant to Fed.R.Civ.P. 37(b) (2) plaintiff will be restricted to proving that it had public performance rights in the titles listed in the relevant exhibits (and to be listed in the amended answer on or before October 17, 1966), and no other titles. If, however, plaintiff fails to file that amended answer on or before October 17, 1966, plaintiff will be precluded from proving that it had public performance rights in any compositions whatever.

4. To the extent that the same or similar excuses for failure to comply with the court's order appear in plaintiff's other answers, they are similarly rejected (unless the court expressly indicates otherwise in dealing with the other answers).

 Interrogatory No. 3 seeks very detailed information regarding the "pedigree" of each of the compositions listed in response to Interrogatory No. 2. (The compositions treated as listed for the purposes of this motion are hereafter referred to as the "relevant compositions.")

The plaintiff has responded by affirming that it owns the copyrights in each of the relevant compositions, that there has been no change in that status since 1954, and incorporating by reference additional information contained in Exhibits 2833, 2833A and 2833B. The maximum additional information contained in those exhibits is the author and the copyright broadcast clearance date (which it is alleged is also the approximate year of copyright and composition).

This answer does not comply with the court's order of July 17, 1964. Even if the court were to treat the information contained in Exhibits 2833, 2833A and 2833B as having been set forth in plaintiff's answer (i. e., in a manner similar to its treatment of plaintiff's answer to Interrogatory 2) it is clear that plaintiff would still have failed to furnish the overwhelming bulk of the information called for by Interrogatory No. 3. Pursuant to Fed.R.Civ.P. 37(b) (2) plaintiff is precluded, as to any of the relevant compositions, from proving: the names and address of composers; the dates of composition; the dates of copyrights; the forms of any copyrights; the registration of any copyrights; its proprietorship of any copyrights (no matter how obtained); and the existence of any rights to print, sell, translate, arrange, adapt, record or synchronize any of the relevant compositions.

The court has also found that with respect to the "Super Song" plaintiff's failure to comply with the court's order has been willful, intentional and in bad faith. Supra. Plaintiff's contumacious conduct calculated and designed to frustrate the order of this court is reprehensible and irresponsible in the extreme and deserving of the strongest censure and severest sanctions. Pursuant to Rule 37(b) (2) the court would be well within its sound discretion were it to fine or imprison plaintiff's president, Barney Young, for the deliberate flouting of this court's order. But the court will withhold imposing any sanctions at this time other than precluding plaintiff from introducing any evidence whatever regarding the "Super Song."

 Interrogatory No. 4 asks, in effect, whether subsequent to February 1954 there was any change with respect to any of the matters inquired into in Interrogatory No. 3, not set forth in response to that interrogatory. Plaintiff has simply responded that there has been "no change." The court previously ruled that a similar "no" answer was unresponsive because no responsive answer had been given to Interrogatory No. 3. There is still no responsive answer to that Interrogatory. Accordingly the court finds plaintiff's "no change" answer to Interrogatory No. 4 unsatisfactory.

 Interrogatory No. 5 asks plaintiff to "state whether any person made any claim that was outstanding in and after February 1954 to be the copyright proprietor of, or to be the holder of, any rights, or of the right to grant others any rights, of the kind specified below [i. e. public performance rights, rights to print and sell copies of the compositions, etc.] * * * [of any of the relevant compositions]. * * *" Plaintiff's answer, in effect, is that it recollects none. The court has already found, supra, that plaintiff's president, Barney Young, was aware of claims being pressed by Miss Gloria Parker as to approximately 45 of the relevant compositions, and did not answer Interrogatory No. 5 in good faith but rather willfully, deliberately refused to comply with this court's order of July 17, 1964. This is another instance of plaintiff's contemptuous conduct by its president, Barney Young. The strictures of Rule 37(b) (2) are no less applicable in this situation than they were in the "Super Song"

incident. Supra. The court at this time, however, will similarly withhold imposing any sanction other than precluding plaintiff from introducing any evidence whatever regarding any of the compositions to which Miss Parker, in 62 Civil 953, asserted that she has performance rights.

 Interrogatory No. 6 asks plaintiff, in effect, to state which of the relevant compositions were made available to the public and with respect to each such composition the form (i. e. recorded or otherwise) in which the composition was made available, the date or dates (and periods for which) it was made available, in the case of each such composition which was recorded, whether notice of mechanical use thereof was filed in the Copyright Office and if so the date or dates of filing. The interrogatory also asks in the case of recorded compositions whether notice of mechanical use was filed and the date of filing. It also asks whether the plaintiff has in its possession or under its control any of the forms or copies of any of the forms in which the compositions were made available. Plaintiff's answer indicates, in effect, that all of the relevant compositions were made available to the public. This satisfactorily answers the first portion of defendants' interrogatory. Plaintiff also states that it has no recollection of the forms in which the compositions were made available to the public (although it believes that such availability was in the form of records or printed manuscript). Plaintiff also indicates that the form in which the relevant compositions were made available, whether notices of mechanical use were filed and the dates of filing, "can be ascertained by a search of the records in the Copyright Office" and that it (plaintiff) has not been able to locate any of the forms or copies of the forms in which the compositions were made available to the public. This portion of plaintiff's answer does not comply with the court's order of July 17, 1964. Pursuant to Fed.R.Civ.P. 37(b) (2) plaintiff is precluded from proving:

the forms in which the compositions were made available; the dates on which (and periods for which) the compositions were made available; and in the case of any composition which was recorded, that notice of mechanical use thereof was filed in the Copyright Office, the name of the label or labels on which such composition was recorded and the name of the recording artist.

 Interrogatory No. 7 asks the plaintiff to state with respect to each date set forth in response to Interrogatory No. 1 (dates of solicitation), *inter alia,* the names and addresses of the persons solicited and the means of such solicitations. The only specific solicitation dates set forth in answer to Interrogatory No. 1 are in February 1954, March 1954, and November 1954. In response to Interrogatory No. 7 the only persons specifically named as having been solicited are the NBC Network, 30 Rockefeller Plaza, the CBS Network, 485 Madison Avenue, and RKO-Mutual Broadcasting System, 1440 Broadway, all in New York City. The listing of these names and addresses is a responsive answer. Plaintiff also, however, indicates that at least some of the solicitations referred to in answer to Interrogatory No. 1 were "general solicitations made to local radio stations throughout the United States in 1954. The names, addresses and persons solicited and the call letters of the stations and the place of solicitation were taken from the Radio Annual Publication for the Year 1953." Plaintiff does not affirm that it solicited each and every one of the approximately 3000 radio stations listed in the Publication. It would, in effect, have the defendants go to the publication and pick out for themselves which stations were or were not solicited. This portion of the answer is not in compliance with the court's order, and, pursuant to Rule 37(b) (2) the plaintiff is precluded from proving that it solicited any radio station except the NBC Network, the CBS Network, and RKO-Mutual Broadcasting System.

Interrogatory No. 8 asks the plaintiff to state with respect to each person listed in Interrogatory No. 7 (as having been solicited) the title or titles of the composition as to which a public performance right license was offered. Plaintiff has responded that the titles of the compositions are those listed in Exhibits 2833, 2833A and 2833B. This answer does not comply with the court's order of July 17, 1964. Moreover, if the court were to treat the titles contained in Exhibits 2833, 2833A and 2833B as having been set forth in plaintiff's answer (i. e., in a manner similar to the court's treatment of plaintiff's answer to Interrogatory No. 2) it is clear that the plaintiff would still have failed to furnish the information called for. Interrogatory No. 8 asks the titles solicited "with respect to each person listed in response to Interrogatory 7." Plaintiff, in its response to Interrogatory No. 7 indicated that it had solicited "radio stations throughout the United States" and that the names and addresses of the persons solicited were taken from the Radio Annual Publication for the Year 1953 (containing a list of approximately 3000 radio stations). It would be impossible for the court to infer which of these radio stations were solicited as to which particular musical compositions. Even if plaintiff's answer to Interrogatory No. 7 be deemed limited to the three radio networks whose names expressly appear therein (i. e., NBC, CBS, and RKO-Mutual) a satisfactory answer to Interrogatory No. 8 would still require an inference that each of the networks had been solicited as to each composition set forth in the exhibit. No such inference can reasonably be drawn from plaintiff's answer and certainly the defendants are entitled to have the interrogatory answered in accordance with the court's order "separately, definitely, and fully. * * *" Pursuant to Fed.R.Civ.P. 37 (b) (2) the plaintiff will be precluded from proving that it solicited public performance rights licenses from any of the three networks listed in response to Interrogatory No. 7 or from any of the radio stations whose names and addresses appear in the Radio Annual Publication for the Year 1953.

Interrogatory No. 9 asks in effect whether any person listed in response to Interrogatory No. 7 took a public performance rights license, and if so the name of such person, the title of the composition and date on which the composition was licensed. Plaintiff's answer to Interrogatory No. 9 refers the defendants to Exhibits 773 through 817 (which plaintiff alleges are license agreements) and in effect tells the defendants to cull the exhibits for themselves in order to determine the names of the persons who took public performance rights licenses, the titles of the compositions licensed, the dates of such licenses and the other relevant material. This answer does not comply with the court's order of July 17, 1964. Pursuant to Fed.R.Civ.P. 37(b) (2) plaintiff will be precluded from proving that any of the persons listed in response to Interrogatory No. 7 took any public performance rights licenses from the plaintiff.

Interrogatory No. 10 asks in effect whether any party other than those listed in answer to Interrogatory No. 7 took public performance rights licenses from the plaintiff and to give detailed information regarding any such agreements, including the name and address of any such party and the titles of the compositions subject to the agreements. Plaintiff has replied simply "No." The answer "No" (that is, no other party took a public performance rights license) is a satisfactory answer.

The defendants have not objected to plaintiff's answer to Interrogatory No. 11 and accordingly that answer is deemed to have complied with the court's order of July 17, 1964. No sanction will be imposed with respect to the answer to Interrogatory No. 11.

■ Interrogatory No. 12 asks plaintiff, in effect, to state whether any person listed in response to Interrogatory No. 7 requested information of plaintiff concerning a public performance rights license and if so detailed information including: the name and address of the party; whether the request was in writing; the nature and date of the request; and the nature and date of the information plaintiff supplied in reply. Plaintiff has responded that "it is believed" that persons whose names are included in answer to Interrogatory No. 7 requested information concerning plaintiff's solicitations. Even if the "It is believed that persons" language is taken as an assertion that all of the persons listed in response to Interrogatory No. 7 requested information from the plaintiff, the answer fails to provide the details of those requests and the details of the information supplied by the plaintiff. To refer the defendants to Exhibits 852 through 875A and have them seek out the information for themselves is not in compliance with the court's order of July 17, 1964. Pursuant to Fed.R.Civ.P. 37(b)(2) plaintiff will be precluded from proving that any of the three networks listed in response to Interrogatory No. 7 or any of the radio stations listed in the Radio Annual Publication for the Year 1953 requested any information from the plaintiff concerning the plaintiff's solicitation of public performance rights licenses.

■■ Interrogatory No. 13 relates specifically to Par. 99 of plaintiff's amended complaint in which it is alleged that plaintiff offered to act as "indemnifier or title clearance agency" for approximately 50,000 compositions. The interrogatory seeks, *inter alia*, the titles of the compositions, the names and addresses of the composition composers, the dates when each of the compositions were composed, the names and addresses of the copyright proprietors, the forms of copyright, and the copyright registration numbers. Plaintiff's answer provides none of these details with regard to the 50,000 compositions and is not in compliance with the court's order of July 17, 1964. Plaintiff's answering affidavits, however, indicate in effect that all of the approximately 50,000 compositions referred to in Par. 99 of the complaint were compositions in the public domain and that plaintiff makes no claim "that plaintiff actually had 50,000 other titles of musical compositions. The fact is there are possibly hundreds of thousands of musical compositions in the public domain, and the use of the number 50,000 in the November 1954 solicitation was intended only to refer to songs in the public domain of which a licensee might elect to make an inquiry. * * * Moreover, plaintiff has admitted in its answers that it does not have 50,000 titles and the pedigree details relevant thereto." Affidavit of Barnard Young, filed March 17, 1965, pp. 20–21. Plaintiff's answer to Interrogatory No. 13 also indicates that the plaintiff is not "making any claim in this lawsuit for compensation except as to the [relevant] musical compositions. * * *" Interrogatory No. 13 has effectively served to narrow the issues and clarify the contentions of the parties. Pursuant to Fed.R.Civ.P. 37(b)(2) the following facts shall be taken to be established: (a) plaintiff never had title to any of the 50,000 compositions; and (b) that all of the said 50,000 compositions were in the public domain. Plaintiff will be precluded from seeking any recovery related to its alleged offer to act as indemnifier or clearance agency for the approximately 50,000 compositions referred to in Par. 99 of plaintiff's complaint.

■ Interrogatory No. 14 asks, in effect, that plaintiff state, for the period in and after February 1954, its address or addresses, the period of time it remained at these addresses, whether plaintiff was the principal tenant, the amount of monthly rent paid, the name of the person to whom the rent was paid, the nature and approximate value of the furniture and fixtures owned by the plaintiff, and whether the premises was

occupied by other persons (listing the names, dates of occupancy and nature of business of each of the other persons). Plaintiff's answer indicates that from 1954 to 1963 its address was Suite 305, 1650 Broadway, and that plaintiff was the principal tenant from 1954 through 1957. This portion of the answer supplies the information sought in some of the subdivisions of the interrogatory. Plaintiff's answer also indicates that after 1957, until 1963 "it was a subtenant and contributed a small part of the rent from that period on. In 1964 its sole address has been a post office box No. 340, New York 19, N.Y." Plaintiff has not given the names and addresses of the other persons who utilized the premises, the rent paid by plaintiff, to whom or for what period the rent was paid, or any information regarding the nature and approximate value of the furniture and fixtures owned by the plaintiff. Plaintiff has not complied with the court's order of July 17, 1964. Pursuant to Fed.R.Civ. P. 37(b) (2) the following facts shall be taken to be established: (a) plaintiff did not have adequate furniture and fixtures to carry on a performance rights licensing business from 1954 through 1963; (b) plaintiff was not the principal tenant but rather shared its premises with numerous other persons from 1957 through 1963; and that (c) the other persons sharing plaintiff's premises were engaged in the same or in a similar line of commerce as the plaintiff. Plaintiff, moreover, will be precluded from proving, during the time it was either principal tenant or subtenant, the amount of rent paid and to whom it was paid.

■■■ Interrogatory No. 15 asks plaintiff to state for the period in and after February 1954 the names and addresses of each of plaintiff's employees (other than officers), the dates of employment, the wages paid, the duties of each such employee, whether each such employee was full or part time, and if part time information regarding the employee's other employment. Plaintiff's answer, in effect, is that since 1960 it has had no employees except plaintiff's president and an inactive vice-president, Dan Fox, and that "since 1960 plaintiff has been inactive and without employees." The answer relating to the period in and after 1960 substantially complies with the court's order of July 17, 1964. For the period between February 1954 and 1960 plaintiff's answer refers the defendants to the deposition of plaintiff's president (including the documents marked thereon) and, in effect, tells the defendants to find the information for themselves. This portion of the answer (i. e., that portion of the answer relating to the period February 1954 through 1960) does not comply with the court's order of July 17, 1964. Pursuant to Fed.R.Civ. P. 37(b) (2) the following facts shall be taken to be established: that for the period in and after February 1954 plaintiff had no employees of any kind whatever, other than officers.

■■■ Interrogatory No. 16 asks plaintiff to state for the period in and after February 1954, the names and addresses of its officers (including the office held by each), the duties of each such officer, whether the officers devoted full time to the performance of those duties, and if not, detailed information regarding the other persons, if any, for whom duties were performed, including the relationship of the other person to the plaintiff and the relationship of each of plaintiff's officers to the other person. Plaintiff's answer indicates that during the entire period Barnard A. Young has been the president, Dan Fox its vice-president. The answer also gives the address of Barnard A. Young. These answers are in compliance with the court's order of July 17, 1964. Plaintiff's answer to Interrogatory No. 16 also indicates that: "From 1954 until the initiation of this litigation 1956 Barnard A. Young devoted substantial time and resources seeking to launch and further the business of plaintiff" and that for further information defendants are referred to the deposition

of plaintiff's president (including the exhibits marked thereon) in order to find the information for themselves. This portion of plaintiff's answer is not in compliance with the court's order of July 17, 1964. Pursuant to Fed.R.Civ.P. 37 (b) (2) plaintiff will be precluded from proving the existence of any officers other than Barnard A. Young and Dan Fox, and the duties of each such officer. It shall be taken to be established that those two officers did not devote their full time to plaintiff's business and that the greater part of their time was devoted to other enterprises. Mr. Young's inability to state under oath his own duties or whether or not he worked full time appears to be another instance of bad faith.

Defendants' motion to dismiss the complaint denied.

Defendants' motion for other and further relief granted as indicated herein.

So ordered.