Fuchsberg, J.
(concurring). This case presents claims (1) that the District Attorney, in bringing appellant before the Grand Jury, acquiesced in the acceptance of a judicial offer of redemption and thus waived any objection to its enforcement and (2) that the unappealed decision of the Judge who granted the defendant’s motion to purge himself became the "law of the case” binding on District Attorney and trial court alike. Beyond that, the analytical divergence of the opinions below points up the recurrent confusion in the law of contempt.[1] I therefore believe more extensive discussion is merited.
Though the power to punish for criminal contempt in New York is now to be found entirely in our statutes, its roots are ancient. In Anglo-Saxon tradition alone this power is traceable at least as far back as the twelfth century (Fox, History of Contempt of Court [1927], p 1). Blackstone later described it as "an inseparable attendant upon every superior tribunal” and *319 "as ancient as the laws themselves” (4 Blackstone, Commentaries, p 282). And American courts, following those leads, have consistently regarded it as inherent and indispensable to their judicial functions (see, e.g., United States v Hudson, 7 Cranch, [11 US] 32, 34; Thomas, Problems of Contempt of Court, pp 49-53).
Appellant, by his refusal to answer questions posed by the Grand Jury, flouted this power. The dignity of our courts having thus been affronted, its vindication could follow one of two statutory avenues,[2] either that prescribed by sections 750 and 751 of the Judiciary Law or the one to be found in sections 215.50 and 215.51 of the Penal Law.
Under the Judiciary Law sections, a court has the power summarily to punish for specified acts, among which is "contumacious and unlawful refusal to be sworn as a witness; or, after being sworn, to answer any legal and proper interrogatory.” While the sanctions which may be imposed under these sections may be expeditious, they are comparatively light, being limited to a $250 fine and 30 days in jail. (This relative leniency has not been without criticism; see the comments of Professor Siegel in McKinney’s Cons Laws of NY, Book 7B, Practice Commentary to CPLR 2308, subd [a].)
In this case, as no summary action was instituted against appellant under the Judiciary Law, the concomitant discretion that a court acting summarily retains to allow a contemnor to purge himself did not come into play (cf. People ex rel. Valenti v McCloskey, 6 NY2d 390, 399, app dsmd 361 US 534).
Under the Penal Law sections, while the State may attempt to exact a more severe penalty, it may not proceed summarily. Thus, having chosen to indict the appellant here for criminal contempt in the first degree under section 215.51 of the Penal Law, a class E felony, the People were required to accord him all the safeguards of a plenary trial. Another result of the pursuit of proceedings under the Penal Law rather than the Judiciary Law was that the appellant could not absolve himself of his contemptuous conduct by his subsequent compliance with the commands of the court.
For section 215.51 of the Penal Law made appellant’s crime complete when, "after having been sworn * * * before a grand jury, [he] refuse[d] to answer”. His belated change of heart *320 could no more excuse him from responsibility for his crime than would an indicted embezzler’s disgorgement of the avails of his larceny (cf. People v Colombo, 29 NY2d 1, 3, vacated and remanded on other grounds 405 US 9). Nor could Leone’s subsequent testimony before the Grand Jury eradicate the intent with which he defiantly undertook to obstruct justice two and a'half years earlier.
That his ameliorative conduct might be appropriately considered by the sentencing Judge on the limited issue of punishment is besides the point. For that purpose, eventual compliance very well could be a mitigating factor. But it was not a defense. (Yates v United States, 355 US 66, 72.) Consequently, on the issue of guilt or innocence, proof of the fact that he eventually did testify and of the issuance of the order which preceded that event were properly excluded at trial.
True it is that the outstanding "purge” order may have led Leone to believe that retroactive immunity could be his. But, in testifying, he did no more than what he was obligated to do. The prosecutor’s right to recall him was not dependent on the order. Had the appellant then continued in his refusal to answer questions — even if conviction and punishment for the earlier offense had already been a thing of the past — the State would have had the right to persist in its efforts to obtain his testimony and, if necessary, to have prosecuted him anew for a later and therefore separate contempt (Matter of Ushkowitz v Helfand, 15 NY2d 713; Matter of Second Grand Jury v Cirillo, 12 NY2d 206 [Desmond, Ch. J.]; People v Matra, 42 AD2d 865, 866; Matter of Vario v County Ct., 32 AD2d 1038, 1039, mot for lv to app den 25 NY2d 741; United States ex rel. Ushkowitz v McCloskey, 359 F2d 788).[3]
The appellant also cannot take refuge behind a "law of the case” contention that the Trial Judge and the prosecutor were bound by the terms of the "purge” order. The law of the case doctrine is not an inflexible rule (Dictograph Prods. Co. v Sonotone Corp., 230 F2d 131, 134-135 [Learned Hand, J.], reh *321 den 231 F2d 867, cert dsmd 352 US 883; cf. Martin v City of Cohoes, 37 NY2d 162, 165). Absent a claim of double jeopardy, of which there is none here, a criminal defendant has no vested right in an error of law (United States v Wilson, 420 US 332, 345).
Nor was the earlier Judge’s postindictment grant of leave for defendant to purge himself a bar to the prosecution. In criminal no less than in civil cases, where circumstances require it, one Judge has the power to deviate from a decision made by another (State v Richards, 229 NW2d 229, 232-233 [Iowa]; People v Milo, 35 AD2d 848 [semble]; but see People v Lenti, 46 Misc 2d 682, 685). All the more was this so here, where the People could not appeal unless and until the indictment was dismissed (see CPL 450.20; cf. Matter of Alphonso C., 38 NY2d 923, 925). It was most doubtful too that prohibition would have been a viable remedy (Matter of State of New York v King, 36 NY2d 59).
In short, affirmance in this case is dictated not only by the resolution of the stellar issue but of its satellites as well.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones and Cooke concur in Per Curiam opinion: Judge Fuchsberg concurs in result in a separate opinion in which Judge Wachtler concurs.
Order affirmed.

. (See Moskowitz, Contempt of Injunctions, Civil and Criminal, 43 Col L Rev 780; Civil and Criminal Contempt in Federal Courts, 17 FRD 167.)

. The double jeopardy clause precludes resort to both statutory schemes for prosecution of the same offense (see People v Colombo, 31 NY2d 947).

. I am aware of the fact that the American Bar' Association has recently expressed a contrary view (American Bar Association, Policy on the Grand Jury [1977], comment 24, p 16). But I see no reason to depart from Chief Judge Desmond’s analysis in Cirillo. As he put it, "Every citizen is subject to be recalled as a witness before the same Grand Jury or investigating body. There is no reason why one should get immunity as to subsequent contempts by serving a term of imprisonment and paying a fine. The State has a right to his truthful testimony and has a right to try again to get it after he has once been found guilty of contempt and punished” (p 210).